# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# CHARLESTON DIVISION

| | | |
|---|---|---|
| Beatrice V. Johnson, individually and as Personal Representative of the Estate of Paul Antione Johnson, | ) ) ) ) | C/A No: |
| Plaintiff, | ) ) | COMPLAINT (42 U.S.C. § 1983) |
| vs. | ) ) | (Jury Trial Demanded) |
| Tanya Adams, Joyce Rice, Janet White, and Henry Williams, LPN, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## JURISDICTION

1.     This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

2.     Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

## PARTIES

3.     The Plaintiff, Beatrice V. Johnson, is a citizen and resident of the County of Colleton, State of South Carolina. She is the properly appointed Personal Representative of the

Estate of Paul Antione Johnson by Order of the Colleton County Probate Court dated October 22, 2019 under case number 2019-ES-15-00348.

4.      This suit is filed on behalf of the heir(s) of Paul Antione Johnson.

5.      At all times mentioned in the Complaint, the Defendants Lt. Tanya Adams and Sgt. Joyce Rice were supervisors, administrators, and/or employees of the Colleton County Sheriff's Office who supervised others at the Colleton County Detention Center. At all relevant times hereinafter mentioned these Defendants were acting individually as employees and/or administrators of the Colleton County Detention Center. For purposes of claims asserted under 42 U.S.C. § 1983, this Defendant is being sued in her individual capacity, under the color of state law. Upon information and belief, these Defendants either had direct contact with the decedent, had direct knowledge of his medical condition (including his need for medical care), or supervised others who had direct contact with him.

During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to the Defendants listed above, including and not limited to, the decedent's right to appropriate medical/mental health care and due process. Additionally, these Defendants had actual and/or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to the decedent. Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by the decedent.

6.      Upon information and belief (during the time period set out below) Defendant Janet White was a Correctional Officer at the Colleton County Detention Center who had direct

contact with the decedent and became aware of his serious medical condition. Prior to his death, this Defendant had the obligation and the opportunity to secure the appropriate medical/mental health care and treatment, refrain from utilizing physical cruelty and to afford the decedent due process. This Defendant was deliberately indifferent to the emergent medical needs of the decedent by consciously failing to secure the appropriate medical care. A more detailed description of the Defendant's actions are set out below. During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to the Defendant listed above, including and not limited to, the decedent's right to appropriate medical care. For purposes of claims asserted under 42 U.S.C §1983, this Defendant is being sued in her individual capacity under the color of state law.

7.       Upon information and belief (during the time period set out below) Defendant Henry Williams, LPN (who was providing nursing services at the Colleton County Detention Center) who had direct contact with the decedent and became aware of his serious medical condition. Prior to his death, this Defendant had the obligation and the opportunity to provide the appropriate medical care and treatment, refrain from utilizing physical cruelty and to afford the decedent due process. This Defendant was deliberately indifferent to the emergent medical needs of the decedent by consciously failing to provide the appropriate medical care. A more detailed description of the Defendant's actions is set out below. During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to the Defendant listed above, including and not limited to, the decedent's right to appropriate medical care. For purposes of claims asserted under 42 U.S.C §1983, this Defendant is being sued in his individual capacity under the color of state law.

8.      The allegations set forth in this Complaint occurred in Colleton County; therefore, venue is proper in this District.

## FACTS

9.      The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants while in the custody of and/or incarcerated at the Colleton County Detention Center.

10.      Prison officials have a federal constitutional duty (under the 8th Amendment) to protect detainees from probable foreseeable harm. In this case the Plaintiff is informed and believes that (a) prison officials knew that the decedent was exposed to a substantial risk of serious harm to his physical safety; (b) the Defendants consciously failed to take reasonable measures to abate the risk; and (c) the decedent suffered serious injuries and death as a direct result thereof.

11.      The decedent, Paul Johnson, was arrested and brought to Colleton County Detention Center on Thursday, July 11, 2019. It is documented by Defendant White at booking that the decedent had a history of hypertension and diabetes; that his current medications were Glipizide, Jardiance, Crestor, Lisinopril and Zoloft; and that the decedent was having suicidal ideations. Therefore, the Defendants (to include Tanya Adams, Joyce Rice and Janet White) should have been well aware of these issues.

12.      The Plaintiff is informed and believes that the above-named administrator/supervisor (Tanya Adams and Joyce Rice) at the Colleton County Detention Center had entered into a pattern and practice of failing to provide the adequate and/or specific number of properly trained officers at numerous locations throughout each facility. Further, the employees and detention staff of Colleton County Detention Center knew or should have known

that their conscious failure to provide adequate security measures would result in unsafe conditions for the detainee population – to include and not be limited to failing to recognize a detainee (such as the decedent) with a serious medical/mental health condition requiring emergent medical care.

13.     Prior to the events in question, each of the individual Defendants had received training to recognize when a detainee had potential symptoms or precursors to suicide and/or those which required emergent medical care. Additionally, these Defendants had received training that required them to ensure that the detainees needing such medical care received it in an emergent fashion. In this case, the Defendants consciously failed to take the actions they were trained to provide. Further, even without training, the individual Defendants (to include and not be limited to Tanya Adams, Joyce Rice, Janet White and Henry Williams) should have easily been able to recognize that the decedent had a serious medical/mental health condition which required emergent medical care. Failure to ensure that the decedent received the appropriate lifesaving medical/mental health treatment was an example of conscious and deliberate indifference.

14.     Additionally, prior to and during the events in question, the Plaintiff is informed and believes that there were Colleton County Detention Center policies and procedures in place for the Colleton County Detention Center requiring the correctional staff working the units to inform the supervisors as to what is going on. Specifically, the correctional staff had the obligation to tell their supervisors (such as Defendants Tanya Adams and Joyce Rice) (based on training and their policies and procedures) about an inmate with a condition which was deteriorating and required immediate medical/mental health care. Therefore, it is likely that these specific supervisors would likely have received direct knowledge of the decedent's deteriorating

condition and their failure to ensure that he received this care and treatment was an example of conscious and deliberate indifference.

15.    Additionally, as part of the Colleton County Detention Center's policies and procedures, as well as their training, the individual supervisors (to include Tanya Adams and Joyce Rice) were required to walk through all units at least once every 30 minutes (during their shifts) and perform random security checks (to include the area where the decedent was located). Therefore, as they were the supervisors working numerous shifts during the time periods in question, they would likely have had contact with the decedent. In this regard they easily should have been able to recognize that he required emergent medical care based on his severely deteriorated condition. Their conscious failure to do this was a violation of standards set out in their training and policies and procedures.

16.    Prior to the events in question all of the individual Defendants (to include Adams, Rice and White) received the appropriate training in how to properly screen a new detainee being booked into the CCDC. Further, they were properly trained to recognize when a person (such as the decedent) was exhibiting certain physical signs and symptoms requiring him to be either seen immediately by the appropriate medical staff or sent directly to the hospital.

17.    Upon information and belief, when the decedent arrived at the detention facility, he was exhibiting specific signs and symptoms indicating that he required immediate medical attention and/or increased supervision. However, the Defendants (including Defendant Adams, Rice, White and Williams) consciously failed to recognize these symptoms and further consciously failed to ensure that he received the lifesaving assistance be required.

18.    The Plaintiff is informed and believes that, at time of admission, Defendant White conducted an intake screening that consciously failed to document any of the decedent's true

6

physical or medical history. Had the security staff completed a proper medical screening the decedent would likely have been set up to see the responsible physician as soon as it could have been scheduled. Had the Defendants followed their training and completed a proper medical screening, then they should have either ensured that the decedent was seen and examined by the responsible physician, and/or sent to the closest hospital.

19.     Instead, booking was completed and the decedent was placed in a cell within the booking area and placed on a suicide watch by Defendant Adams. Based on the Detention Center's policies and procedures, this required that the decedent be checked on at least once every 15 minutes.

20.     Prior to and during the time period in question, the individual detention officers (to include and not be limited to Adams, Rice and White) assigned to the booking area were required to perform individual cell checks (checking on each and every detainee in the unit) at least once every thirty (30) minutes. The purpose for these checks was to ensure that the inmates (including the decedent) were safe, alive and well. During these contacts the individual Defendants should easily have been able to recognize that the decedent's overall physical and mental condition had drastically deteriorated and that he required emergent medical care. Their continued failure to provide life-saving medical care during the time period in question is another example of their conscious and deliberate indifference to the decedent's medical needs.

21.     Additionally, if a detainee was placed on a suicide and/or medical watch, they were to be properly observed every 15 minutes by detention staff – to include Defendants Rice and White.  The purpose of this policy was to protect the security and wellbeing of the detainees and to ensure that their mental and physical health had not deteriorated. In this case, the decedent was placed on a suicide watch when he entered the facility and continued to be on a suicide

watch until July 17, 2019. During this time period, it is documented that Defendants Rice and White would have seen the decedent at least once every 15 minutes over an extended period of time. During these checks, it should have been easy for them to determine that his health condition had greatly deteriorated.

22.     During this time (July 11, 2019 to July 17, 2019), it would have been abundantly clear to Defendants Rice, White and Williams – who were documented as "watching" the decedent – that his condition was rapidly deteriorating and that he was not received the appropriate medical care. The conscious failure to take any action was a gross violation of the Detention Center's policies and procedures.

23.     The State Board of Nursing for South Carolina [Advisory Opinion #21] has determined that "*it is NOT within the role and scope of practice for the licensed practical nurse (LPN) to perform physical assessments. It is within the role of the LPN to assist with the collection of patient health data to be used for the complete physical assessment. However, the analysis and synthesis of clinical information and the formulation of problem statements and/or nursing diagnoses requires the knowledge base and skills that are within the scope of practice of the registered nurse (RN) and may NOT be delegated to the LPN.*" The Plaintiff is informed and believes that if any medical problem rose to such a level that it was outside of the scope of practice for an LPN (such as Defendant Williams) and that there was no higher-level medical provider available, then the patient (such as the decedent) should have been immediately sent to the nearest hospital to be examined and diagnosed.

24.     On July 17, 2019 at approximately 6:20am, medical was contacted to assess the decedent for complaints of difficulty breathing. In her statement to SLED, Defendant Adams stated that the decedent was breathing very heavily and did not respond when she asked if he was

okay. Vitals taken at that time show an O2 sat of 98%, BP 128/70, pulse 80 and respirations at 22. Defendant Henry Williams, LPN documented that the decedent stated "I don't know" when asked what his trouble was.

25.      At approximately 7:00am, Defendant Adams noted that the decedent was having trouble breathing. Specifically, it was noted that the decedent was taking quick shallow breaths. Additionally, at that time, the decedent required a wheelchair in order to make it to the medical office.

26.      Once in medical, the decedent's O2 sat was 98%. At this time Defendant Williams advised the decedent to take slower, deeper breaths which did not help. A breathing treatment was then given to the decedent by Defendant Williams to help his breathing. This action was inappropriate and did not work. These actions were clearly beyond his scope of practice. The decedent continued to take quick shallow breaths. The decedent was then returned to his cell with a notation by medical that they will continue to monitor. However, the Plaintiff is informed and believes that Defendant Williams incorrectly assumed that the decedent was faking his symptoms/shortness of breath. At this time the decedent needed to be seen by a physician or sent to the closest hospital. The conscious failure to ensure that the decedent was seen by a medical professional was another example of the Defendant Williams' deliberate indifference to his medical needs.

27.      At approximately 8:00am, the decedent was again taken to medical (Defendant Williams) via wheelchair to be seen by mental health. His breathing was still quick and shallow. The decedent was documented by Defendant Williams as alert to person but confused to place and time. When the decedent was asked what his mother's name was, the decedent's response was "bottle." It should have been abundantly clear to Defendant Williams that the decedent was

not physically or mentally stable. At this time, the decedent's blood sugar was checked (for the first time) and was listed at 245 (which is an emergent level). However, instead of ensuring that the decedent was immediately seen by a physician or immediately transferred to the closest emergency room, he was returned to his cell. This was yet another example of Defendant Williams' deliberate indifference to the decedent's medical needs.

28.     At approximately 1:50pm it was noted in the nursing record by Defendant Williams that the decedent was lying slumped over on his side on his bunk with emesis noted. The decedent was assisted into a sitting position to prevent asphyxiation, at which time he vomited a dark, grainy fluid onto the floor at least two (2) more times. At this time, Defendant Williams should have begun lifesaving measures such as CPR. His conscious failure to begin appropriate CPR was another example of his deliberate indifference to the decedent's medical needs.

29.     Colleton County Fire-Rescue was dispatched to the Detention Center at approximately 3:39pm. Upon arrival at the Detention Center at approximately 3:50pm, EMS documents they "*were led into a holding cell where the patient was found. The patient was unconscious and being held up on a bed by jail staff. A healthcare worker stated that earlier in the day the patient was complaining of some breathing difficulty and that they came down and checked his vitals and that they were all normal. He stated that the patient was in the cell on suicide watch for threatening to harm himself. He stated that staff stated the patient was fine and had been doing cell checks every 15 minutes. Other staff on scene stated that the patient had nothing in his cell and that they did not believe the patient could have ingested anything. The patient had black coffee ground type emesis running down his shirt. Emesis was all over the floor. The patient's airway was patent. Patient breathing was shallow. Patient's skin was cool to*

*the touch. Patient was unresponsive to painful stimuli. Patient had a weak, slow carotid pulse.*"
At this time the decedent was placed on a stretcher and emergently taken to the Colleton Medical
Center. He was documented by EMS as having a BGL of 410mg/dL just prior to transport.

30.     The decedent arrived at the Colleton Medical Center emergency room in full
arrest. ER physician conducted ACLS per protocol for approximately 45mins and was eventually
able to regain a heart rate and pulse. The decedent was placed on a ventilator with 100% oxygen
and pressor support was initiated due to persistent hypotension. A CT scan taken of the
decedent's head revealed severe cerebral edema and a CT of the decedent's chest, abdomen and
pelvis revealed a right nondisplaced anterior 3rd rib fracture and some ground-glass airspace
opacities throughout both lungs. Labs revealed multiple abnormalities including severe acidosis,
hyponatremia, acute kidney injury, leukocytosis, and LFT abnormalities. The decedent was
admitted for further evaluation and management as he was deemed too unstable to be transported
to tertiary care at that time.

31.     On July 18, 2019, the decedent was transferred to MUSC. His discharge diagnosis
from Colleton Medical Center lists cardiac arrest, toxic encephalopathy secondary to cardiac
arrest, GI bleed, hyperkalemia, metabolic acidosis, severe dehydration, acute renal failure,
diabetic ketoacidosis, hypocalcemia, acute respiratory failure, type 1 diabetes mellitus, elevated
troponin, and sepsis present on admission.

32.     Initial exam performed on the decedent at MUSC revealed decedent's pupils were
fixed and dilated bilaterally along with absence of corneal, cough and gag reflexes. A STAT CT
of the decedent's head was ordered which demonstrated evidence of cerebral edema and brain
herniation which was suspected to be consistent with brain death. Neurology was brought in to

conduct an apnea test to confirm brain death. Mr. Johnson was pronounced dead July 19, 2019 at 5:13pm at MUSC.

33.    Initial autopsy performed by MUSC on July 22, 2019 lists Mr. Johnson's cause of death as multisystem organ failure due to global ischemia due to hypertensive and atherosclerotic cardiovascular disease. A second autopsy, performed on July 23, 2019 by Dr. Kim Collins at Newberry Pathology found cause of death to be multiorgan failure and acute bronchopneumonia due to diabetic ketoacidosis.

34.    All Defendants had more than sufficient knowledge of the decedent's deteriorating physical and mental condition and they all acted in blatant disregard of his health and life. These Defendants had direct contact with the decedent (during the time period in question) or supervised those who had direct contact with him. Further, these Defendants had the opportunity and obligation to secure the appropriate medical/mental health treatment and care for the decedent. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to recognize and secure the appropriate medical care, treatment and/or supervision which would have included proper assessment, evaluation, and medications. Based directly on their actions or inactions, the decedent suffered needlessly (both physically and mentally) and died on July 19, 2019.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(SURVIVAL)**

35.    Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

36.    The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as officers and/or supervisors of the Colleton County Detention Center and had certain duties imposed upon them with regard to Paul Johnson. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to proper medical care and to be free from cruel and unusual punishment.

37.    The Defendants were consciously and deliberately indifferent to the decedent and the Plaintiff on or around July 11, 2019 through July 17, 2019 in the following particulars:

(a)    in consciously failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent – who had a serious medical/mental health condition which was open and obvious to those Defendants who had contact with him;

(b)    in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)    in entering into a pattern and practice of failing to provide appropriate medical/mental health care;

(d)    in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)    in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and to recognize and prevent his ultimate death;

(f)     in knowingly, deliberately and consciously denying appropriate medical/mental health care to the decedent;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical/mental health care and/or treatment to detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in engaging in a pattern and practice of failing to provide the appropriate booking, screening and/or classification procedures regarding inmates/detainees to properly determine their medical and mental health needs – causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(i)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(j)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(k)     in consciously failing to monitor the decedent, while incarcerated and take steps to recognize and prevent his death;

(l)     in consciously failing to have the proper medical/mental health examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m)     in consciously failing to take the appropriate steps to or provide medical/mental health care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(n)     in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical/mental health care;

(o)     if said procedures do exist, in consciously failing to follow same;

(p)     in abandoning the decedent when he was in desperate need for medical care;

(q)     in consciously failing to follow the mandates of the CCDC's Policies and Procedures and/or Post Orders;

(r)     in consciously failing to follow the mandates of the Minimum Standards for Local Detention Facilities in SC;

(s)     in failing to start and implement the appropriate life saving measures on July 17, 2019, when his condition was rapidly deteriorating.

38.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, as a direct result of the above, the decedent suffered needlessly and ultimately died.

39.     As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotions distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**

15

**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(WRONGFUL DEATH)**

40.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

41.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage, or policy at all times mentioned herein, as officers and/or supervisors of the Colleton County Detention Center and had certain duties imposed upon them with regard to Paul Johnson. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to medical care and to be free from cruel and unusual punishment.

42.     The Defendants were consciously and deliberately indifferent to the decedent and Plaintiff during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent – who had a serious medical/mental health condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)     in entering into a pattern and practice of failing to provide appropriate medical/mental health care;

16

(d)     in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)     in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and to recognize and prevent his ultimate death;

(f)     in knowingly, deliberately and consciously denying appropriate medical/mental health care to the decedent;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical/mental health care and/or treatment to detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in engaging in a pattern and practice of failing to provide the appropriate booking, screening and/or classification procedures regarding inmates/detainees to properly determine their medical and mental health needs – causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(i)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(j)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(k)     in consciously failing to monitor the decedent, while incarcerated and take steps to recognize and prevent his death;

17

(l)     in consciously failing to have the proper medical/mental health examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m)     in consciously failing to take the appropriate steps to or provide medical/mental health care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(n)     in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical/mental health care;

(o)     if said procedures do exist, in consciously failing to follow same;

(p)     in abandoning the decedent when he was in desperate need for medical care;

(q)     in consciously failing to follow the mandates of the CCDC's Policies and Procedures and/or Post Orders;

(r)     in consciously failing to follow the mandates of the <u>Minimum Standards for Local Detention Facilities in SC</u>;

(s)     in failing to start and implement the appropriate life saving measures on July 17, 2019, when his condition was rapidly deteriorating.

43.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the <u>United States Constitution</u>.

44.     The Defendants jointly, severally and in combination thereof, wrongfully caused the death of Paul Johnson by their acts and omissions as described above.

18

45.    As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)    loss of financial economic support and contribution of the deceased;

(b)    extreme mental shock and suffering;

(c)    extreme wounded feelings;

(d)    tremendous grief and sorrow;

(e)    loss of friendship and companionship; and

(f)    deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

46.    The Plaintiff is informed and believes that the Estate of Paul Antione Johnson is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of her Federal Civil Rights 42 USC 1983 – Wrongful Death.

47.    As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(SURVIVAL)**

48.    Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

49.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Colleton County Detention Center and had certain duties imposed upon them with regard to Paul Johnson. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

50.     The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent – who had a serious medical/mental health condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)     in entering into a pattern and practice of failing to provide appropriate medical/mental health care;

(d)     in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)     in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and to recognize and prevent his ultimate death;

20

(f)     in knowingly, deliberately and consciously denying appropriate medical/mental health care to the decedent;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical/mental health care and/or treatment to detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in engaging in a pattern and practice of failing to provide the appropriate booking, screening and/or classification procedures regarding inmates/detainees to properly determine their medical and mental health needs – causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(i)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(j)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(k)     in consciously failing to monitor the decedent, while incarcerated and take steps to recognize and prevent his death;

(l)     in consciously failing to have the proper medical/mental health examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(m)     in consciously failing to take the appropriate steps to or provide medical/mental health care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(n)    in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical/mental health care;

(o)    if said procedures do exist, in consciously failing to follow same;

(p)    in abandoning the decedent when he was in desperate need for medical care;

(q)    in consciously failing to follow the mandates of the CCDC's Policies and Procedures and/or Post Orders;

(r)    in consciously failing to follow the mandates of the <u>Minimum Standards for Local Detention Facilities in SC</u>;

(s)    in failing to start and implement the appropriate life saving measures on July 17, 2019, when his condition was rapidly deteriorating.

51.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the <u>United States Constitution</u>.

52.    As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the decedent, loss of support, mental anguish, loss of quality of life, emotional distress, incurred funeral expenses, attorney fees, and undue grief and will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from the Defendants, jointly and severally for ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(WRONGFUL DEATH)**

53.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

54.     The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Colleton County Detention Center and had certain duties imposed upon them with regard to Paul Johnson. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

55.     The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical/mental health care to the decedent – who had a serious medical/mental health condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously failing to use even slight care and caution in safekeeping the decedent;

(c)     in entering into a pattern and practice of failing to provide appropriate medical/mental health care;

(d)     in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)    in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and to recognize and prevent his ultimate death;

(f)    in knowingly, deliberately and consciously denying appropriate medical/mental health care to the decedent;

(g)    in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical/mental health care and/or treatment to detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)    in engaging in a pattern and practice of failing to provide the appropriate booking, screening and/or classification procedures regarding inmates/detainees to properly determine their medical and mental health needs – causing them to not receive the appropriate medical care, suffer needlessly and sometimes die;

(i)    in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(j)    in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(k)    in consciously failing to monitor the decedent, while incarcerated and take steps to recognize and prevent his death;

(l)    in consciously failing to have the proper medical/mental health examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

24

(m)     in consciously failing to take the appropriate steps to or provide medical/mental health care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(n)     in consciously failing to have the proper policy and procedures necessary to ensure that detainees are provided basic and/or appropriate medical/mental health care;

(o)     if said procedures do exist, in consciously failing to follow same;

(p)     in abandoning the decedent when he was in desperate need for medical care;

(q)     in consciously failing to follow the mandates of the CCDC's Policies and Procedures and/or Post Orders;

(r)     in consciously failing to follow the mandates of the Minimum Standards for Local Detention Facilities in SC;

(s)     in failing to start and implement the appropriate life saving measures on July 17, 2019, when his condition was rapidly deteriorating.

56.     As a direct and proximate result of the Defendants' acts of willful, malicious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

57.     The Defendants, jointly, severally and in combination thereof, wrongfully caused the death of Paul Johnson by their acts and omissions as described above.

58.     As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)     loss of financial economic support and contribution of the deceased;

25

(b)     extreme mental shock and suffering;

(c)     extreme wounded feelings;

(d)     tremendous grief and sorrow;

(e)     loss of friendship and companionship; and

(f)     deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

59.     The Plaintiff is informed and believes that the Estate of Paul Antione Johnson is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

60.     As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, both jointly, severely and in combination thereof, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs and reasonable attorney fees. The Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

_s/ C. Carter Elliott, Jr._
C. Carter Elliott, Jr.
U.S.D.C. Bar #: 5423
Elliott, Phelan & Kunz, LLC
117 ½ Screven Street
P.O. Box 1405
Georgetown, SC  29442
(843) 546-0650 (phone)
(843) 546-1920 (fax)
July 6, 2022                                       carter@elliottphelanlaw.com
Georgetown, South Carolina

27