IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Beatrice J. Johnson, individually, and as Personal Representative of the Estate of Paul Antoine Johnson,<br><br>        Plaintiff,<br><br>  v.<br><br>Tanya Adams, Joyce Rice, Janet White and Henry Williams, LPN,<br><br>        Defendants.<br>_____ | Civil Action No. 5:22-cv-02129-BHH<br><br>**<u>Opinion and Order</u>** |

  Plaintiff Beatrice J. Johnson, individually and as Personal Representative of the Estate of Paul Antione Johnson brought this action alleging violations of constitutional rights on behalf of the heirs of Paul Antione Johnson (hereinafter, "Johnson") pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Pursuant to the provisions of Title 28, United States Code § 636(b)(1)(B), and the Local Rules, D.S.C., this matter was referred to a United States Magistrate Judge for consideration.

  Now before the Court are two pending motions for summary judgment. Defendant Henry Williams ("Williams") filed his motion for summary judgment as to all claims against him on December 21, 2023. (ECF No. 56.) Plaintiff filed a response in opposition (ECF No. 64), and Williams filed a reply. (ECF No. 65.) Defendants Tanya Adams, Joyce Rice, and Janet White (hereinafter, the "CCDC Defendants") filed their motion for summary judgment as to all claims against them on December 21, 2023. (ECF No. 58.) Plaintiff

filed a response in opposition (ECF No. 63), and CCDC Defendants filed a reply. (ECF No. 68.)

On July 30, 2024, United States Magistrate Judge Kaymani D. West issued a Report and Recommendation ("Report"), recommending that Defendants' motions for summary judgment, (ECF Nos. 56, 58), be granted. (ECF No. 78.)

Plaintiff filed objections to the Report (ECF No. 83), and Williams and CCDC Defendants filed replies to Plaintiff's objections on September 26, 2024. (ECF No. 84, 85.)

## Standard of Review

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections, the Court reviews the matter only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

## Discussion

Johnson was incarcerated on July 11, 2019, at the Colleton County Detention Center ("CCDC") as a pretrial detainee. Upon arrival, he disclosed a history of hypertension and Type II diabetes, as well as the medications he was taking at the time of booking. Johnson indicated that he was having suicidal ideations, so he was placed on suicide watch and was monitored more closely.

At all relevant times, Tanya Adams ("Adams") was a lieutenant employed with the CCDC; Joyce Rice ("Rice") is or was a supervisor employed with CCDC; Janet White ("White") was a correctional officer at CCDC and is alleged to have had direct contact with Johnson; and Williams was employed as a nurse by Southern Health Partners, Inc., a company which contracts with Colleton County to provide medical services to detention center inmates at CCDC. Williams provided medical care to Johnson during his incarceration at CCDC.

On July 17, 2019, Johnson experienced a medical emergency at the CCDC, and he later passed away at a nearby hospital. Thereafter, Johnson's mother, Plaintiff Beatrice J. Johnson, initiated this action asserting a § 1983 claim against Defendants based upon deliberate indifference to Johnson's serious medical needs pursuant to the Fourteenth Amendment.  As noted above, Defendants moved for summary judgment in their favor as to the claims asserted against them, and the Magistrate Judge issued a Report recommending that this Court grant Defendants' motions.

I. **Plaintiff's Objections to the Report**

   A. **Defendant Williams**

      1. **Inferences**

3

Plaintiff objects to the Report's ultimate recommendation that summary judgment be granted in Williams's favor because, according to Plaintiff, "there are different reasonable <u>inferences</u> to be drawn from the fact that between July 11 and July 17, 2019, [Johnson] was not observed in *any position* apart from "sleeping" or "quiet" or "sitting" except for <u>one</u> occasion." (ECF No. 83 at 2 (emphasis in original).) However, the Court notes that the Report found that the evidence reflects "a few outliers," to include a notation that Johnson was awake and eating lunch on July 12; that Johnson was sitting up in his cell on July 13; that Johnson was observed standing up on July 14; and that Johnson was walking on the July 16. (ECF No. 78 at 13.) While the Magistrate Judge recognized that the evidence shows that Johnson "had not engaged in significant physical movement for a period of days," the Magistrate Judge concluded that it is ***not*** a reasonable inference to be drawn from these facts that Johnson's "lack of movement was due to a medical condition, or that he was otherwise exhibiting some set of medical symptoms that would alert staff to the existence of a medical issue." (*Id.*) In so finding, the Magistrate Judge noted that the nature of correctional facilities lends itself to a lack of physical activity, especially given that Johnson was on suicide watch. (*Id.*) Thus, the Court finds no merit to this objection and finds, after *de novo* review, that the Magistrate Judge properly concluded that the evidence does not establish a genuine issue of fact as to Williams's interaction with Johnson prior to July 17, 2019, to establish deliberate indifference as to Johnson's medical care.

    **2. Serious medical condition**

Given their interrelation, the Court addresses Plaintiff's second, sixth, seventh, and eighth objections together. In these objections, Plaintiff relies on the affidavit testimony of

her expert, Dr. Grady Judson Bazzel, and she asserts that the Magistrate Judge erred in finding that Johnson was not suffering from a serious medical condition as of 8:00 a.m. on July 17, 2019. According to Plaintiff, Johnson's symptoms that morning, and Dr. Bazzel's opinions that Johnson's blood sugar reading of 245 was an "emergent level"[1] and that Johnson's condition greatly deteriorated over time between July 11 and July 17, 2019, establishes that Johnson's diabetes[2] posed a substantial risk of serious harm well before 4:00 p.m. on July 17, 2019, and that Defendants acted with deliberate indifference as of 8:00 a.m. on July 17, 2019.

Plaintiff previously raised this argument in her response in opposition, and after considering all the evidence in the record, the Magistrate Judge disagreed. (*See* ECF No. 78 at 14-20.) Despite the fact that Plaintiff has simply regurgitated a previous argument, the Court finds after *de novo* review that the Magistrate Judge carefully considered all the evidence in the record bearing on whether Williams should have known by 8:00 a.m. that Plaintiff was suffering from a medical condition that posed a substantial risk of serious harm. For example, as to the blood sugar level, the Magistrate Judge noted that 245 is not a level that was indicated as emergent in Johnson's medical records from his physician. As to whether Johnson's blood sugar level should have been taken three times a day, the Magistrate Judge found that Plaintiff failed to establish this was the standard level of care. The Magistrate Judge also noted that Johnson's blood sugar reading upon being admitted to the hospital **later that day** was not to a level that was indicated as emergent in Johnson's medical records. Further, the Magistrate Judge noted that the

---

[1] (ECF No. 33-2 at 5.)
[2] Upon admission into the correctional facility, Johnson reported that he had non-insulin dependent Type II diabetes. (ECF No. 56-4 at 9-11.)

mental health professional, who assessed Johnson that morning and noted Johnson's disorientation, did not feel that Johnson's condition was emergent. Moreover, this Court's review of Williams's testimony and progress notes indicates that Williams observed Johnson breathing normally both after breathing treatment that morning and then, again, on two separate occasions later that morning. In sum, the Court finds that the Magistrate Judge properly concluded that Plaintiff failed to establish that Johnson's medical condition posed a substantial risk of serious harm prior to the afternoon of July 17, 2019.

Additionally, Plaintiff asserts that the Magistrate Judge applied an incorrect standard under *Short*[3] because *Short* confirmed that Plaintiff is not required to establish actual knowledge, yet the Report noted that the "only evidence in the record establishes that Defendant Williams did not notice any symptoms of diabetic ketoacidosis." (ECF No. 78 at 20.) Upon review, the Court notes that this statement was made after noting Dr. Bazzel's opinion that the medical staff "should have known that DKA was likely." (*Id.*) Importantly, the Magistrate Judge did not recommend a ruling in Williams's favor based on a finding that Plaintiff failed to show Williams's **actual** knowledge of Johnson's serious medical condition. Rather, she considered all the evidence presented by both parties, viewed in the light most favorable to Plaintiff, and determined that the evidence supports a finding that Williams's actions were **objectively reasonable** given the circumstances. Thus, the Court finds no merit to these objections.

### 3. Factual findings regarding July 17, 2019

Plaintiff objects to the following factual findings in the Report: (1) that, as of July 17, 2019, Williams began to monitor Johnson "more closely" (ECF No. 78 at 12), and (2)

---

[3] *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023).

6

that the progress notes show that Williams interacted with Johnson "at least five times on July 17, 2019." (*Id.* at 18.) Upon review, the Magistrate Judge cited to Williams's affidavit to support the first statement. Therein, Williams testified that, on July 17, 2019, he saw Johnson (1) at 6:20 a.m.; (2) at 7:00 a.m.; (3) during his mental health appointment [at 8:00 a.m.]; (4) at 11:12 a.m.; (5) at 12:00 p.m.; and (5) at 3:50 p.m. (ECF No. 56-4 at ¶¶ 7-11.) Williams's affidavit testimony is consistent with the progress notes attached thereto, which list by date/time five different occasions prior to 3:50 p.m. in which Williams either interacted with or observed Johnson on July 17, 2019. (ECF No. 56-4 at 15.) Thus, the Court finds no merit to these objections.

### 4. Statements of Defendants Rice and/or Adams

Plaintiff next objects that the Report ignored or made credibility determinations as to record statements of Defendants Rice and/or Adams that they informed Williams of Johnson's breathing problems or worsening condition on July 17, 2019, but Williams did not come to check on Johnson.

Upon review, the Court finds that the Report thoroughly details the timeline of events on July 17, 2019, as reflected in the record. (*See* ECF No. 78 at 14-17.) It appears this objection is centered mostly on the following testimony of Rice:

> A: I -- I was in booking area. I -- I went and checked on Mr. Johnson. I guess it was around like 9:40 that morning, and he was breathing very heavily, the chest going up and down, up and down. He was just like breathing. I informed the nurse and told her, you know, what -- told him what I saw. And he said he -- you know, that he had checked him earlier. And –
>
> Q: He didn't come back?
>
> A: No. He didn't come back. He said he had checked him earlier, and, you know, his vitals and everything checked out okay. So, you know, like I say, we kept checking on him, checking on him. Then I went out of the booking area.

> Q When -- looking at this, though, when do you think you told the nurse that and they didn't come back?
>
> A: I think it was like 9:30 –
>
> Q: Okay. Got it.
>
> A: -- that morning.

(ECF No. 64-6 at 61, Rice Dep. 60:6:24; *see also id.* at 64, Rice Dep. 63:19-22.) Plaintiff also contends that Rice testified that the nurse "did not come check on [Johnson] until he was found 'slumped over' at 4PM." (ECF No. 83 at 7.) According to Plaintiff, "[t]hese statements clearly and unequivocally contradict Nurse Williams['s] statements (or the notations in medical records) that he increased his 'monitoring' after the early morning of July 17, 2019. (*Id.* (emphasis in original).)

First, as to Rice's latter alleged testimony, the Court notes that the portion of the transcript that Plaintiff cites reveals that Rice did ***not*** testify that Williams did ***not*** check on Johnson between being asked to do so at 9:30 a.m. and 4:00 p.m. that day. In fact, Rice's deposition transcript reveals the following exchange:

> Q: And that was from 9:30 all the way down to where they found him slumped over, ended up having to go to the hospital. And then he ended up dying; you know that, right?
>
> A: Yes.

(ECF No. 64-6 at 61, Rice Dep. 65:18-22.) Thus, it is evident that Rice responded "yes," to being asked if she knew that Johnson "ended up dying." Accordingly, the Court finds that Rice's testimony does not contradict Williams's testimony or progress notes as to when Williams interacted with or observed Johnson on July 17, 2019. Accordingly, the Court disagrees with Plaintiff's claim that the Magistrate Judge made credibility

8

determinations as to record statements of Rice (or Adams, for that matter). Rather, upon *de novo* review, the Court finds that the Magistrate Judge closely examined all the evidence bearing on whether Williams's actions or inactions were objectively reasonable in this case. As shown above, on July 17, 2019, Williams checked on Johnson several times; Williams also relied on Johnson's relatively normal vital signs, as well as the observation that his breathing was normal after breathing treatment; and Williams contacted and relied on the response of Johnson's supervising physician, Dr. Wimberly, who advised Williams to continue observation of Johnson. Williams also checked Johnson's blood glucose level that morning, and based on Johnson's own physician's records, it was not at a level that would have been considered "emergent." The Report also noted the fact that the mental health provider who saw Johnson that morning did not feel Johnson's condition was emergent; rather, her notes indicated that observation should continue. Accordingly, the Court finds this objection without merit.

### B. CCDC Defendants

#### 1. Direct Liability & *Burns* case

With regard to the CCDC Defendants, Plaintiff objects to the Magistrate Judge's finding that CCDC Defendants did not fail to act to appropriately address the risk of harm to Johnson and that their actions or inactions did not result in harm to Johnson. (ECF No. 78 at 25.) Specifically, Plaintiff takes issue with the Report's statement that CCDC Defendants "sought the advice of the medical professionals who were on site that morning to determine the best course of action." (*Id.* at 26.) According to Plaintiff, the record does not support this notion, relying solely on Rice's deposition testimony excerpted above.

9

The Court disagrees. After *de novo* review, Rice's deposition testimony supports that Rice relied on the information relayed to her by Williams – i.e., that Williams had checked on Johnson earlier and obtained normal vitals from Johnson. Further, the record reflects that Adams requested the breathing treatment for Johnson, provided Johnson with water, and continued to ask for medical assistance to determine the best course of action. Thus, the Court finds no merit to this objection.

Plaintiff next objects to the Magistrate Judge's "legal application" of *Burns v. Ashraf*.[4] (ECF No. 83 at 14.) Plaintiff relied on *Burns* in her response in opposition (ECF No. 63 at 17); however, the Magistrate Judge found the instant facts distinguishable from those presented in *Burns*:

> In that case, the officer reported the incident to a nurse, and the nurse refused to provide treatment. By contrast, the CCDC Defendants in this case observed that Plaintiff, in their layperson opinion, did not "look right," and took several steps to ensure he was provided medical care. Once medical care arrived, the nurse took Mr. Johnson's vitals and determined that his vitals were normal. Mr. Johnson was also going to see a mental health professional that day, as well, who also returned him to his cell without advising he be taken to the hospital. Meanwhile, the CCDC Defendants continued to check on Mr. Johnson and called for immediate medical attention when they realized that Mr. Johnson's condition was emergent.

(ECF No. 78 at 26-27.) Relying on the same testimony of Rice, above, Plaintiff claims this finding was in error because "Nurse Williams 'did not come' – i.e., 'refused to provide treatment.'" (ECF No. 83 at 14.) The Court disagrees. As already discussed above, the record does not support a finding that Williams **refused** to provide treatment to Johnson. Rather, when Williams was informed by Rice around 9:30 a.m. that Johnson was breathing heavily, Williams had already interacted with and observed Johnson three times

---

[4] No. JKB-18-03100, 2019 WL 4169838 (D. Md. Sept. 3, 2019), *aff'd in part, appeal dismissed in part*, 837 F. App'x 1019 (4th Cir. 2021), and *aff'd in part, appeal dismissed in part*, 837 F. App'x 1019 (4th Cir. 2021).

10

that day, and he knew Johnson's vital signs had otherwise been normal; he knew Johnson had been administered a breathing treatment; and he had observed Johnson breathing normally post-treatment. Further, shortly after speaking with Rice, Williams informed Johnson's physician of his status, and his doctor recommended that Johnson remain on suicide watch for observation. The record further reflects that Williams checked in on Johnson two more times after speaking with Johnson's doctor and prior to 3:50 p.m., and Williams observed Johnson breathing normally on both occasions. Thus, the Court finds no merit to this objection.

### 2. Qualified Immunity

Plaintiff's final objection is with regard to the Report's findings on qualified immunity. However, the objection is not specific. Instead, Plaintiff states in wholly conclusory fashion that she objects "to Judge West's findings based on the evidence the Plaintiff has presented in her original response to the Defendants' Summary Judgment Motion[s], as well as in the Plaintiff's objections to the Report and Recommendation." (ECF No. 83 at 14.)

Under § 636(b)(1), a party's objections to the Report must be "specific and particularized" to facilitate district court review. *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). *De novo* review is not required "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific, proper, and timely filed objection, the Court reviews only for "clear error," and need not give any explanation for adopting the Report. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). *See also Williams v.*

*New York State Div. of Parole*, No. 9:10-CV-1533 (GTS/DEP), 2012 WL 2873569, at *2 (N.D.N.Y. July 12, 2012) (noting that if "only a general objection is made to a portion of a magistrate judge's report-recommendation, the [c]ourt subjects that portion of the report-recommendation to only a clear error review").

Having found no clear error[5] in the Report's findings as to whether Defendants are subject to qualified immunity, the Court overrules this objection and finds that Defendants are entitled to qualified immunity.

### Conclusion

For the foregoing reasons, the Court **adopts and specifically incorporates** the Magistrate Judge's Report (ECF No. 78); **overrules** Plaintiff's objections (ECF No. 83); **grants** Defendant Williams's motion for summary judgment. (ECF No. 56); and **grants** CCDC Defendants' motion for summary judgment. (ECF No. 58.) Accordingly, the Court also finds **moot** CCDC Defendants' pending motion to substitute expert witness. (ECF No. 74.)

**IT IS SO ORDERED.**

/s/ *Bruce Howe Hendricks*
United States District Judge

September 26, 2024
Charleston, South Carolina

---

[5] The Court notes that even under a *de novo* review, it would confirm the Magistrate Judge's findings with regard to qualified immunity.